# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
(Filed: February 21, 2018)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | | UNPUBLISHED |
| BONNIE FORMAN-FRANCO, | * | |
| | * | |
| Petitioner, | * | 15-1479v |
| v. | * | |
| | * | Chief Special Master Dorsey |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | Finding of Fact; Influenza ("flu") Vaccine; |
| | * | Shoulder Injury Related to Vaccine |
| Respondent. | * | Administration ("SIRVA"). |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

Paul Brazil, Muller Brazil, LLP, Dresher, PA, for petitioner.
Adriana Teitel, U.S. Department of Justice, Washington, DC, for respondent.

**RULING ON FACTS**[1]

On December 7, 2015, Bonnie Forman-Franco ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*, (the "Vaccine Act") or ("Program"). Petitioner alleges that she suffered a shoulder injury as the result of an influenza ("flu") vaccination she received on December 30, 2013. Petition at Preamble.

Prompting this fact ruling is a status report filed on June 12, 2017, in which petitioner requested a fact hearing to determine the onset of petitioner's shoulder injury. Status Report dated June 12, 2017 (ECF No. 39). The undersigned granted petitioner's request, and a fact hearing was held on August 15, 2017. After a review of the record as a whole, a fact hearing, and for the reasons set forth below, the undersigned finds by preponderant evidence that the

---

[1] This decision will be posted on the website of the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)B), however, the parties may objection to the published Decision's inclusion of certain kinds of confidential information. Specifically, Under Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public in its current form. Id.

onset of Ms. Foreman-Franco's alleged shoulder injury occurred within 48 hours of her influenza vaccination on December 30, 2013.

## I.   Procedural History

In the petition filed on December 7, 2015, petitioner asserts that she received a flu vaccine in her left shoulder on December 30, 2013, at the office of her primary care doctor, Dr. Mark Meltzer. Petition at ¶ 3; Tr. 6. Petitioner also filed a statement of completion on December 7, 2015. Statement of Completion dated Dec. 7, 2015 (ECF No. 2). This case was initially assigned to the Chief Special Master via the Special Processing Unit ("SPU"), and the initial status conference was held on January 13, 2016.

After the status conference, petitioner identified and filed additional medical records and an amended statement of completion, and respondent filed a Rule 4(c) Report on August 24, 2016, arguing that petitioner's request for entitlement to compensation be denied. Respondent's Report ("Resp. Rep.") dated Aug. 24, 2016 (ECF No. 23) at 1. During a subsequent status conference on September 1, 2016, petitioner was ordered to file an affidavit detailing the onset of her alleged injury. Order dated Sept. 1, 2016 (ECF No. 24). Petitioner filed an affidavit and additional medical records on October 18, 2016. Notice of Filing dated Oct. 18, 2016 (ECF No. 25).

A status conference was held on September 1, 2016, during which the parties discussed the possibility of a litigative risk settlement. The parties were ordered to file a status report updating the Court as to the progress of their settlement discussions. Order dated Oct. 19, 2016 (ECF No. 26). Petitioner filed a status report on November 18, 2016, stating that she had communicated a demand to respondent and awaited a response. Status Report dated Nov. 18, 2016 (ECF No. 27). Respondent then requested updated primary care records, which petitioner filed, along with an amended statement of completion, on March 8, 2017.

On April 7, 2017, respondent filed a status report in which he stated that after reviewing petitioner's affidavit and additional medical records, he was not interested in settlement. Status Report dated April 7, 2017 (ECF No. 36). A status conference was held on May 18, 2017, during which the OSM staff attorney reported the undersigned' recommendation to have a fact hearing to address issues related to the onset of petitioner's alleged injuries. Order dated May 18, 2017 (ECF No. 37).

A fact hearing occurred before the undersigned in Washington, D.C., with petitioner and her counsel attending via videoconference, on August 15, 2017. After the hearing, petitioner was ordered to file outstanding medical records, a corrected affidavit regarding onset, and a status report confirming that all medical records had been filed. Order dated Aug. 15, 2017 (ECF No. 43). Petitioner filed an amended affidavit on September 13, 2017, and she filed a motion to issue a subpoena for additional medical records on September 22, 2017. Petitioner filed additional medical records on September 25, 2017, and October 16, 2017. After a second motion for a subpoena was filed on November 15, 2017, petitioner filed additional medical records on January 18, 2018.

This case was transferred from SPU to the undersigned's non-SPU docket on December 20, 2017, as the undersigned determined that the case no longer fit the criteria for SPU. Order dated Dec. 20, 2017 (ECF No. 57). The parties did not file any posthearing briefs. The undersigned now issues this fact ruling.

## II.     Factual History

Petitioner's medical history prior to her 2013 flu vaccination is significant for both left and right shoulder injuries and rotator cuff surgeries. On March 14, 2006, petitioner visited Dr. Alpert, her orthopedist, with complaints of pain in her right shoulder after a fall. Pet. Ex. 9 at 11. Dr. Alpert ordered an MRI, which revealed a "small tear of the supraspinatus tendon." Id. at 11, 20. Physical therapy was recommended, and petitioner underwent right shoulder surgery on April 20, 2006. Id. at 16-17. Petitioner had a follow up appointment on July 24, 2006, during which she reported a full range of motion and good shoulder strength, despite some pain. At an appointment on September 25, 2006, she reported experiencing bicep tendonitis a few weeks prior, but her condition had since improved. Id. at 6-7.

Petitioner visited Dr. Alpert on July 30, 2007, this time with complaints of pain in her left shoulder after she had fallen down the stairs. Pet. Ex. 9 at 5. A subsequent MRI showed "a full thickness tear of the rotator cuff, both supraspinatus and infraspinatus." Id. at 5, 23. On August 3, 2007, petitioner had rotator cuff repair surgery and an open subacromial decompression on her left shoulder. Id. at 18-19. At her post-operative appointment on November 19, 2007, petitioner had regained full range of motion and was doing well. Id. at 2.

The medical records do not document that petitioner experienced any other symptoms in either of her shoulders until December 30, 2013, after she received a flu vaccination in her left arm at the office of her primary care doctor. Pet. Ex. 1 at 7. Her medical records, however, are silent as to the problem until May 10, 2014, when she visited her chiropractor, Dr. Weinstock, complaining of left shoulder pain. Pet. Ex. 8 at 2. Around this time, petitioner visited her orthopedist, Dr. Kerker, with a chief complaint of "right hip and low back pain." Pet. Ex. 10 at 1. At that visit, petitioner stated that she had been experiencing pain in her lower back, down her right leg, and in her buttock for the last few months. Id. Dr. Kerker's impression was "1. Lumbar Degenerative Disk Disease [and] 2. Right hip pain." Id. at 2. Physical therapy and treatment with anti-inflammatory medications was recommended. Id. During this visit, petitioner did not report experiencing shoulder pain.

Petitioner saw Dr. Schwartz, an orthopedist, on July 28, 2014, complaining of left arm pain for the last seven months. Pet. Ex. 2 at 1. At this visit, petitioner also had limited range of motion, and Dr. Schwartz ordered an MRI, which was performed on July 31, 2014. Pet. Ex. 4 at 1-2. The radiologist's impression was "status post rotator cuff tear with focal separation of the posterior fibers of the supraspinatus tendon which may be due to prior surgery or less likely a retear…" Id. Petitioner saw Dr. Schwartz for a follow up visit after her MRI, and he administered a cortisone injection and recommended physical therapy. Pet. Ex. 2 at 4.

Petitioner returned to Dr. Schwartz on August 14, 2014, complaining that she had experienced severe bicep pain when getting up from a chair a few days before. Pet. Ex. 2 at 5.

She was referred to physical therapy, which she attended three times in August 2014. Pet. Ex. 5 at 7-12. Petitioner saw Dr. Schwartz again on October 20, 2014, during which she reported both left shoulder soreness and pain in her lumbar and right leg. Pet. Ex. 2 at 7. Dr. Schwartz recommended that petitioner undergo arthroscopic surgery on her left shoulder for rotator cuff repair. Id. at 8. He also prescribed Medrol and physical therapy for her back and leg pain. Id.

Petitioner had arthroscopic surgery on her left shoulder to repair her rotator cuff on January 29, 2015. Pet. Ex. 2 at 11-12. At a follow up with Dr. Schwartz on May 8, 2015, petitioner stated that she was about 80% improved but that she still experienced some discomfort. Pet. Ex. 2 at 16. She continued to attend physical therapy. Pet. Ex. 5 at 14-38.

During the hearing on August 15, 2017, petitioner testified regarding the onset of her injury. Petitioner stated that within two hours of receiving the flu vaccine on December 30, 2018, she "was having a great deal of difficult manipulated [her] arm …" Tr. 8. She took Motrin to ease her pain, but the next day she had to ask her office manager, Michael Valasky, to assist her with her rounds at work. Id. at 9. She stated that she did not immediately report the pain to her doctor's office because she had never had a flu shot before and thought "this it was not uncommon to have some discomfort." Id. at 10.

Mr. Valasky also testified during the hearing on August 15, 2017. He stated that on December 31, 2013, the day after petitioner's flu shot, he assisted her with removing her jacket and recalled her complaining about her shoulder hurting. Tr. 52. He testified that on that day, petitioner "appear[ed] to be [in] much more pain than a usual shot would give." Id. at 56. He said that he had to continue assisting her with "day to day activities" at work, because she was unable to carry them out herself due to her shoulder injury. Id. at 53; 58-59.

### III.   Parties' Arguments

In his Rule 4(c) Report, respondent argues that petitioner is not entitled to compensation. Resp. Rep. at 2. Respondent also argues that petitioner's onset was not immediate. To support his argument, respondent states that petitioner's treating doctors believe that her complaints about left shoulder pain were the result of a retear of her previously surgically repaired rotator cuff. Id. at 9. Respondent notes that petitioner had prior injuries to her left shoulder for which she underwent rotator cuff surgery on August 3, 2007. Id. at 2. Respondent also points out that petitioner did not associate the onset of her left shoulder pain with the flu vaccination she received until almost seven months later, at an appointment with Dr. Schwartz on July 28, 2014.[2] Id.

In her affidavit, petitioner alleges that "within two hours" of her flu vaccination on December 30, 2013, she felt "aching pain" in her left shoulder. Petitioner's Exhibit ("Pet. Ex.") 16 at 1; Tr. 8. Although the pain was not initially severe, the pain worsened within 24 hours, when petitioner could not comfortably lift her arm. Id.; Tr. 8. Petitioner testified that the day after she had the flu shot, she asked her office manager to assist her with seeing patients because

---

[2] The records, however, show that on May 10, 2014, approximately four months after her flu vaccination, petitioner presented to her chiropractor, Dr. Weinstock, with complaints of pain in her left shoulder. Pet. Ex. 8 at 2.

4

she was unable to move her left arm. Tr. 9. For the next several months, petitioner limited the use of her shoulder and treated her pain with naproxen, ibuprofen, and acetaminophen in hopes that the pain would resolve on its own. Pet. Ex. 16 at 2. Despite limiting the use of her arm and taking over the counter pain killers, petitioner stated that by May 2014, "[her] shoulder pain had become worrisome enough that [she] sought medical attention." Id. at 3.

### IV. Discussion

#### a. Applicable Legal Standard

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. 42 U.S.C. § 300aa-13(a)(1)(A). To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. See Burns v. Sec'y of Health & Human Servs., 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. See Cucuras v. Sec'y of Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." Sanchez v. Sec'y of Health & Human Servs., 110685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. April 10, 2013) (citing Blustein v. Sec'y of Health & Human Servs., 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

#### b. Evaluation of the Evidence

Here, the undersigned finds that there is preponderant evidence to support that the onset of petitioner's left shoulder pain occurred within 48 hours of her December 30, 2016 flu vaccination. Because this type of injury, SIRVA, is rare, it is not unusual to see the lack of documentation that exists in petitioner's case. The undersigned finds petitioner's affidavit and testimony to be credible. Petitioner's clinical course and diagnosis is consistent with a SIRVA injury. Additionally, the supplemental affidavit and testimony submitted by petitioner and Mr. Valasky offer corroboration of her claim that she experienced left shoulder pain after receiving the flu vaccination on December 30, 2013, and the following day, December 31, 2013.

Although petitioner did not initially complain to her treating doctors of left shoulder pain following her flu vaccination, the undersigned finds that this is reasonable because, based on her experience with similar cases in the Program, it is not uncommon for a petitioner to delay seeking treatment for a shoulder injury after vaccination. Petitioner delayed seeking treatment for the injury by taking over the counter anti-inflammatory medication and hoping that the pain would cease. Pet. Ex. 16 at 2. It is reasonable that petitioner did not mention the pain she felt in her shoulder to her proctologist, Dr. Bute, during her February 17, 2014 colonoscopy. Pet. Ex. 1 at 44. Petitioner also testified that her shoulder pain was not a primary concern at the visits with her orthopedist in April 2014, as she was having a great deal of back pain as the result of stenosis. Tr. 20. While these entries are not helpful to petitioner, they are also not inconsistent with her assertions. Additionally, petitioner complained to her chiropractor in May 2014 that she had been experiencing pain in her left shoulder for the past four months. Pet. Ex. 8 at 2.

5

Medical records from petitioner's visit to Dr. Schwartz on July 28, 2014, indicate that petitioner had been experiencing left arm pain for the last seven months. Pet. Ex. 2 at 1. This is temporally consistent with petitioner's testimony regarding onset.

Moreover, petitioner testified that she did not immediately notify her primary care physician of her shoulder pain because she had "never had the [flu] shot before [and thought] that it was not uncommon to have some discomfort." Tr. 10. The undersigned credits the explanation given by petitioner in her affidavit and during her testimony that she experienced pain within two hours of receiving the vaccination but attributed it to a normal outcome following the vaccination and thus did not seek treatment sooner. Pet. Ex. 16 at 2; Tr. 10. The undersigned also credits the testimony of petitioner's office manager, Michael Valasky, who testified that he had to assist petitioner in taking off her jacket on December 31, 2013, the day after she received the influenza vaccination, due to pain in her shoulder. Tr. 52.

## V.    Conclusion

Thus, the undersigned finds, based on the record as a whole, that the onset of petitioner's symptoms occurred within 48 hours of petitioner's flu shot on December 13, 2013.

A scheduling order will issue directing the parties as to further proceedings.

**IT IS SO ORDERED.**

s/Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master
